Okay, the next case on our docket is Credit Acceptance Corporation v. Jamie Cartwright, 524-0636. The parties want to take their respective positions at the tables. Mr. McIntosh, you represent Credit Acceptance Corporation? Yes, Your Honor. Would you like to begin? First name, I represent Jamie Cartwright. Jamie Cartwright. I represent the appellant. Okay, you represent the appellant. Yes, Your Honor. Okay, would you like to proceed? Yes, Your Honor. Good morning, and may it please the Court. Good morning. My name is Ben McIntosh. I represent Jamie Cartwright in this case. She is the defendant counterclaimant in the underlying proceeding in the trial court. This is a case in which Credit Acceptance Corporation filed a deficiency action against Ms. Cartwright, took a default judgment against her after she filed a petition to vacate that default judgment. The default judgment was set aside, and when she filed a counterclaim, Credit Acceptance Corporation decided to move to compel arbitration of the litigation that it initiated when it filed suit. So this is a case in which Jamie Cartwright alleges that Credit Acceptance Corporation is systematically violating Illinois law by failing to send borrowers something called an affidavit of defense. In a nutshell, the legislature requires that creditors send borrowers a document that gives them the opportunity to tell the creditor, this is why the repossession of my car is wrong. If the borrower returns that to the creditor within 21 days, then the creditor has to go to a court and get a judicial ruling that yes, the repossession is proper, and they can go ahead and sell that collateral. So it's a really important procedural right that's protecting consumers in these secure transactions. So this appeal is about the trial court granting a motion to compel arbitration in this case. Now, mainly there's two reasons why that ruling should be reversed. The first is that this type of dispute concerning the repossession and sale of the collateral is exempted from the arbitration clause, specifically the definition of dispute in that arbitration clause. And the second main reason... Are you talking, which definition of dispute are you talking about, where it says dispute does not include the repossession? So I think that's baked into the definition. The way that I read it is there's an overall definition, and then there's carve-outs of that definition that are sort of like exclusions in an insurance policy. So the way that the contract is structured, and actually I have multiple copies of it, that would benefit the court. But the way the contract is structured, at the very top it says, this arbitration clause describes how a dispute, and it's capitalized, as defined alone may be arbitrated. So we're talking about what disputes can be arbitrated. If you go to the third paragraph of that contract, it says a dispute is any controversy or claim between you or us, including, and then it's very broad. It talks about contract. It talks about tort, statute, anything like that. It's a very broad definition of dispute. But one thing that is not an issue that credit acceptance agrees with is that the definition of dispute only encompasses claims. It doesn't encompass actions in the real world. So now that brings us to this exemption that you were referencing, Your Honor. The exemption says dispute, and, again, it harkens back to that word. It's capitalized, and it's in quotes. So we know it's referring to claims. What that phrase says is dispute does not include any repossession of the vehicle upon your default and any exercise of the power of sale of the vehicle. And so, essentially, what this language has done has peeled out disputes concerning repossession and sale of the collateral. And this is the language that was drafted by a credit acceptance corporation. They've copyrighted the contract. And so when we look at it, now, this is purely a contract interpretation issue, right? The Supreme Court's made clear in Morgan v. Sundance that arbitration contracts are on equal footing. We're not going to lean in favor of arbitration. We're not going to lean against it. We're going to apply ordinary state law principles to the contract. So at its core, this is just a contract interpretation question. So one of the most important pieces of contract interpretation is that we look at the language as a whole. So what is the language as a whole telling us? Well, there's a broad definition of dispute and then there's carve-outs from that definition of dispute. So when you harmonize that paragraph, that phrase, dispute doesn't include repossession and sale, has to be peeling away the types of claims that the parties have agreed to arbitrate. This is simply a matter of contract. But there's more evidence to that effect in the contract as well because one of the main rules of contract interpretation is that we don't assume that parties would include pointless or superfluous language. So below, in the seventh paragraph, it starts with notwithstanding. And I should back up because what the trial court found was that this language that I say carves out this dispute from arbitration, it only applied to the action of repossession and sale collateral itself. It didn't apply to claims concerning those subjects. But the problem with that ruling is that if you go just a little bit further down the contract, it does that in another sentence. It says, notwithstanding the foregoing, we retain the right to repossess the vehicle upon your default and to exercise any power of sale under this contract. So the trial court's ruling was, in essence, that even though the two provisions at issue contained different language, the contract said the same thing twice with different words. That's very much contrary to the law on contract interpretation, and I think it's contrary to the intention of the parties when this was drafted. At the end of the day, contract interpretation is an objective analysis because parties can say anything they want about their subjective feelings about what contract language says when a dispute erupts. That's why we have these tools to look at the meaning of contracts. Now, there's other reasons why Ms. Carr writes interpretation of the contract is well supported in the law. There's also a rule that says that specific provisions tend to govern over general provisions. When we're trying to figure out if the language isn't 100 percent clear and there's ambiguity, what are some tools we can use? So we have specific govern over general. In this case, the CARBA, the exemption of disputes about repossession and sale, is more specific than the general definition that really broadly applies to most claims you could possibly think of. So that's one other, you know, I guess arrow in the quiver to show that, yes, this is a CARBA, and it governs over the general definition of dispute in the contract. What do you think the notwithstanding language goes to? What do you think the – why was that added? So, honestly, I think it was added to fulfill the function that the trial court said the exemption fulfilled to say we are allowed to use self-help to go repossess your car. And that's pretty common in secure transactions, so I certainly understand why they would want to put that in the contract. I don't understand how that's in the contract and the same thing is said in the definition of dispute. I don't think that's harmonizing the language and reading it as a whole. So I do think that credit acceptance wanted to make clear, yes, we are allowed to use self-help to take your car. And your claim deals with something that's ancillary to the self-help issue, this notice of defense. Well, it's part of the process because the CARBA applies both to repossession and the sale of the car. So after the car was – Repossession is the taking.  And the sale is the sale. But Illinois law has interposed kind of a defense, if you will, that's what they call it, so that the consumer isn't sitting there without any notice of default. So we're trying to protect the consumer with this notice. And so it seems to me that the notice has to be part of this repossession process. I agree with that. Okay. At the end of the day, the notice should be sent alongside some other notices that are required by the law. There's a bunch. The Uniform Commercial Code has some notices, and then the statutory scheme with the affidavit of defense has a notice of redemption, and then the provision that we're talking about here, the affidavit of defense. But at the end of the day, whether it's baked into the repossession or it's baked into the sale, it's part of this process of taking collateral and selling collateral. And the reason that this clearly applies to that is because at the end of the day, the sale was not proper. They're not supposed to sell the collateral unless they send the affidavit of defense. So in failing to send the affidavit of defense, they violated Illinois law with respect to, at minimum, the sale of collateral and likely repossession of collateral as well. That's why I do think we're on all fours with the exemption and the arbitration clause that peels this case out from the arbitration clause. The other thing is when we're dealing with contract language that the court might find to be ambiguous, which personally I don't think this is ambiguous, I think it's clear if you harmonize all the language that this case is peeled out from the scope of arbitration. However, what the trial court stated on the record was that reasonable minds can differ about how we apply this language. Well, Ms. Cartwright is not the drafter of this contract, and the rule is that if there's any ambiguous language, and the definition of ambiguity is in essence if reasonable minds can differ, then we lean in favor of the party that did not draft the contract. That's Ms. Cartwright. So, you know, there's a lot of different ways that when we just look at this contract, whether from harmonizing the language as a whole or applying the principles of contract interpretation if we're dealing with ambiguity, the correct decision would be to deny the motion to compel arbitration because this case falls outside the scope of the arbitration provision. And that's the burden of proof of credit and acceptance to prove, not Ms. Cartwright. So if the Court doesn't have any other questions on the contract interpretation thing, I'm prepared to move on to the waiver argument we also have. Okay. So, you know, even if the Court did not agree with our argument on contract interpretation, credit acceptance corporation still waived any right to arbitrate this case. Credit acceptance corporation filed suit against my client. Credit acceptance corporation, knowing that she was sick and bedridden, sued her. Credit acceptance corporation took a default judgment against her at the very first hearing on the case before she was able to locate counsel to help her out. This put her in a position to where she had no ability to do anything to protect her interests other than to seek judicial remedies. Nothing can be more inconsistent with a right to arbitrate than to put your counterparty to it. Not after a judgment, Your Honor. Well, the judgment. She could move to set aside the default judgment and compel arbitration. I agree with that, Your Honor, but I do think that at the end of the day, she still had to get a judicial remedy in the form of setting aside the judgment. Well, but even to compel arbitration, you have to ask the Court for it. Sure, if the parties are at loggerheads. You could call that a judicial remedy. So you think just the filing of the suit and obtaining a default judgment is enough to waive the entire contract? I think it's enough to waive the arbitration provision, Your Honor, because what constitutes waiver of an arbitration provision is submitting arbitrable issues to the Court for decision. That's what the case law says. And obtaining a judgment where you get relief remedies in the form of money damages is the very definition of submitting those issues to the Court. But it was a default judgment, though. I mean, she did not appear. It was a default judgment, correct? That's absolutely correct, Your Honor, but it doesn't change the substantive and material remedies that credit acceptance obtained. And I don't believe a trial court could enter default judgment solely on the procedural ground that somebody didn't appear in court. If the court were to look at the complaint and say, well, nevertheless, you're not entitled to relief, I don't think default judgment could be entered. So baked into even a default judgment is still a merits determination. So that is what credit acceptance asked the trial court to do, was make a merits determination, enter judgment, and require Ms. Cartwright to go to court in order to protect her interests in the case. I do believe under the case law that's enough to qualify as a waiver of the arbitration provision. Was it a small claims situation or a no-loan situation? I don't know the answer to that, Your Honor. I believe that it was small claims, but I'm not 100% sure. Because a part of the definition excludes small claims for the consumer. This dispute does not include a small claims for the consumer, so it seems that tit-for-tat wouldn't include it for the credit acceptance as well if it was a small claims. I don't believe that this was a small claims case, but I don't want to say something incorrect. I don't think the amount is qualified for small claims, but I'm using my recollection now again. I thought only because of the amount. Sure. And I do believe that the arbitration clause only carves out small claims for Ms. Cartwright, not for credit acceptance. So under their own contract, they didn't exempt their own case from arbitration. I believe I'm out of time. I have a question about this default judgment. You and credit acceptance, you meaning Ms. Cartwright, you agreed to set it aside, not knowing, of course, what was coming down the road. But you agreed to set it aside, and then credit acceptance dismisses their lawsuit. What effect, if any, does that have on your argument of waiver? I think it supports waiver because at the end of the day, credit acceptance knowingly reinstated the litigation because our petition to vacate the judgment said very plainly, we intend to file a counterclaim based on these issues. So with eyes wide open, credit acceptance corporation consented to the reinstatement of the litigation. And only after we filed a counterclaim with the words class action in it did they decide we need to escape from litigation. And that's sort of the real rub here in what especially the federal courts have been saying about waivers. Parties can't use litigation to test the waters and then decide, oh, this isn't going well. We need to get out of this and arbitrate. But that's kind of exactly what credit acceptance corporation did here. They were happy to litigate this case, and they consented to it going back to litigation after they got a judgment. Thank you, Your Honor. You'll have a few minutes, Mr. McIntosh, after Mr. Hurd. Thank you, Your Honor. We'll hear from Mr. Hurd on behalf of credit acceptance. Thank you, Your Honor. May it please the Court. Good morning. Rob Hurd here on behalf of credit acceptance corporation. And the trial court in this case spent more than two hours listening to argument and reviewing the briefs on this matter and arrived at the following reasoned conclusions. Ms. Cartwright's counterclaim squarely falls within the scope of the parties arbitration clause. It does not fall within an exception to the clause. And credit acceptance did not waive the right to arbitrate this dispute. I want to start with the clause itself. It says the dispute is any controversy or claim. Mr. McIntosh likes to avoid the controversy part, focus on claim. He likes to say credit acceptance recognizes that this language refers to claims. Well, it refers to controversy or claims. And that becomes important because, again, it also says that disputes are given the broadest meaning possible. When you get to the exclusion, it says dispute does not include either controversies or claims, not just claims, controversies or claims. Dispute does not include any repossession of the vehicle upon your default, any exercise of the power of sale of the vehicle under this contract, or any individual action by you to prevent us from using such a remedy, so long as such an individual action does not involve a request for monetary relief of any kind. That exception is very important. The third portion of that says any individual action. The prior two exceptions do not say any repossession action. It doesn't say it does not include anything about. And, in fact, when Mr. McIntosh was explaining his understanding of this exception clause, he cannot say it without saying about, about. You know, every time he has to refer to it, it has to be a dispute does not include something about repossession. This language is simply the repossession of the vehicle, the exercise of the power of sale of the vehicle, and the right by Ms. Cartwright to bring an individual action to prevent us from taking such a remedy. And this exclusion has a reason. The first two exclusions, so credit acceptance maintains its right to normal self-help remedies or the right to reclaim without arbitration. The third part allows Ms. Cartwright, she maintains the ability to sue in court to stop that repossession. So this is giving both sides, this exception is giving both sides the ability to, here is what you can bring in court and seek court relief for. Otherwise. So you admit that she could file a lawsuit in court to stop the repossession as long as she doesn't ask for money. She can ask for an injunction. She could, exactly. What about class action to ask for injunctive relief to make you comply with the notice of defense? It's not what's been filed, so I can't consider. Well, then I want to ask you, you talk about what is included and what is not included in the definition.  If we define repossession as the act of taking and what is included within that, Illinois law may include the notice of defense. Well, I would say the exception is any individual action. So to your question, could she bring injunctive relief on behalf of the class, I would say no, because the individual portion of that term would restrict it to simply bringing action on behalf of herself. But where it says any individual action, that's preceded by the word or, not and. Yes. So we have two phrases in the disjunctive. One is, does not include any repossession of the vehicle upon your default, or any individual action. So if I want to argue with you, your definition of what could or could not be included is in two different phrases in the disjunctive. Do you see what I'm asking? I do, I do. I think the and is there between one and two because repossession goes along with the sale.  And then, or, your dispute does not include any individual action to stop that repossession. So my question is, he could bring a class action for injunctive relief as long as there's no money involved. As long as it relates to repossession of the vehicle. I'm not reading that away just because of the individual. But isn't that what we have here? A class action where they're asking for injunctive relief? They're seeking money damages. Well, that as well. They're also seeking money damages. Are they not seeking relief to force compliance with the law? I think the focus was on seeking the money damages. So it's been a while since I've looked back at the complaint. Okay. You agree that this sentence that Mr. McIntosh has asked is the carve out in the arbitration clause? And is the one that we have to interpret in this case? I think there's three sentences in that paragraph that we focus on. The first is the definition of the term. The definition of dispute is any controversy or claim between you or us arising out of or in any way related to this contract. And, you know, the law tells us that when you use that language arising out of or in any way related, it's broad. It's a generic clause. And you give it its broadest meaning. Just following up on that is then the second sentence, dispute shall have the broadest meaning possible. Just being absolutely clear that dispute is broad. And then we have this limited exception. And I would agree that that sentence, dispute does not include any repossession, et cetera, et cetera, would be the third sentence to focus on. Let me ask you, how is a notice of defense something that's related to this contract if it's required by Illinois law? The notice of defense? Yes. It's a statutory requirement. It's independent of this contract. So my question is, how is this a dispute related to this contract? Well, first off, the notice of defense is an Illinois statutory requirement. This contract is a Kentucky contract. It was executed in Kentucky. I understand. So my question is, in the very first line of the definition, how is this notice of defense a dispute or controversy between you and us arising out of or in any way related to this contract? It's a Kentucky contract under Kentucky law. We're in Illinois. We're now required to follow Illinois law. I don't understand how it arises out of this contract.  Maybe it's just the rest of that part that we can, including but not limited to, any default under this contract, the collection of amounts owed, the purchase, sale, delivery, setup of the vehicle, advertising for the vehicle, any product or service included in this contract. Right. I have the same question. Not limited to any default under this contract. It would be related to the default under the contract. So you're saying default is the equivalent of a notice of defense. That's what I'm trying to find out is this is about a notice of defense that was not... It's a case about a violation of statutory law regarding the repossession process. Okay. Now you're getting a little broader, which is what I asked about earlier.  Can you show me where in this arbitration clause you notice of defense a statutory requirement is part of this contract that was written in Kentucky? Yeah. Can you show me where that's included? It doesn't say that. It doesn't say it explicitly, but it's broad language. Show me the broad language. The arising out of or in any way related to this contract, including but not limited to, etc. That's your explanation, arising out of this contract. This contract was for the purchase of a vehicle and payments under the vehicle. Those payments were not timely made. The vehicle was repossessed. So on the exclusion, the exclusion uses the word repossession. And you just used that as part of the definition of why it relates to this contract. So now if I hold you to the word repossession, which you just used, why isn't it part of the carpet? Again, I think, and this may get to. I'm trying to understand myself. I understand. And this may get to Mr. McIntosh's, you know, suggestion that there's superfluous language in the paragraph 7, the notwithstanding the foregoing, we retain the right to repossess the vehicle and also to exercise any power of sale. Making clear. What does that mean? I'm going to ask you the same question. Yeah. What does that phrase mean, notwithstanding? Notwithstanding the foregoing? You know, the trial court said, look, I understand this is a contract that's being used with consumers. You want to spell out and make sure the consumer understands. Here's what you're agreeing to. And so the superfluity, you know, in our briefing, we cite the case saying, you know, while the court should have more superfluity in interpreting contract, there's no rule of interpretation preventing parties from building redundancies into their contracts. We want to be absolutely certain that consumers understand. Just because you're signing this agreement doesn't mean you get to go, you know, that we are giving up our right to repossession or self-help remedies under the law. So are you saying you don't have to arbitrate those issues? When you say notwithstanding? Notwithstanding the foregoing, which is the arbitration agreement. We retain the right to repossess the vehicle upon your default to exercise any power of sale under this contract. So are you saying that the arbitration clause doesn't apply to the right to repossess upon default? Credit acceptance is trying to clarify to the consumer that there would not be a right to arbitration for the repossession of the vehicle, for the power of sale of the vehicle. So there's no right to arbitration on those issues? The right to repossess and the power of sale? Because the dispute does not include any repossession of the vehicle. So why does the notice of default not be included in realization? So the counterclaim is a... So going back up to the second sentence I said to pay attention to. Disputes shall have the broadest meaning possible and include contract claims and claims based on tort, violations of law, statutes, etc. The counterclaim is a claim based on a violation of state statute. I think all the parties agree on that point. So the counterclaim of you didn't send notice is considered in that very broad definition of this is a claim based on violation of state law. And Mr. McIntosh also raised the offhand comment the Court made that reasonable minds can differ. The Court was also very clear that she did not find the contract ambiguous. In fact, saying twice, first, I disagree that the contract is ambiguous. In fact, I find it is non-ambiguous. And then later she said, and later my ruling is that it's not ambiguous. So it was very clear on that point. I'd like to turn to the waiver argument if the Court would like. As a starting point, waiver is not lightly inferred under either Kentucky or Illinois law. It's a very heavy burden for Ms. Cartwright to prove waiver. It's a very fact-intensive determination. Waiver requires substantial conduct. And I think as your Court was suggesting in the questioning of Mr. McIntosh, here the default was vacated. Ms. Cartwright immediately files the counterclaim. And the response to filing a counterclaim, my client didn't proceed to answer. My client didn't proceed to engage in discovery. My client didn't get a trial schedule. My client didn't litigate this matter for months on end. My client immediately, within a week, filed a motion to compel arbitration. So this is clearly distinguishable from the various cases cited on the waiver proposition. Simply filing the original lawsuit is not a determinative on point of waiver. The cases that Ms. Cartwright cites, one of them, plaintiff sought to raise her own claims in arbitration. So she filed a lawsuit. And then later on, after a couple of amendments, she tried to take a case that she herself filed on claims she herself filed and had that sent to arbitration. That's not this case. As the Court recognized, my client dismissed its claim. Has no intention of proceeding on that. But, sir, under the arbitration clause, wasn't your client required to give a 30-day notice? No. And that's because under the arbitration clause, there's two points on that. I see my time's up. You may. Okay, thank you. The dispute notice provision is part of the arbitration clause, as you recognize. When my client initially filed the deficiency action, it wasn't seeking arbitration of that. So it didn't need to send a dispute notice because it was not pursuing arbitration. In the second instance where the counterclaim is filed, it's the complaining party who needs to send the notice. The complaining party would be the person who had proceeded with the counterclaim. So my client wouldn't have needed to send the original cause of action. Did you give a 30-day notice to the plaintiff before filing? No, because we weren't seeking arbitration. Why not? Why were we not seeking arbitration? Right. Why did you choose court as opposed to arbitration? For the claim that we had, I don't know. I was not counsel of my client at that time. Well, is one of the explanations the fact that you were seeking repossession and that's carved out of the arbitration clause? No, the repossession had already occurred. The power of sale had already occurred. And you were seeking the judgment, the difference in the value. Correct. Right. So you don't think that is part of a repossession definition? Seeking a deficiency after the vehicle's already been sold? I mean, as Mr. Cartwright admitted at the trial court, all those things in that exception, the repossession, the power of sale, he said that stuff's already happened. He says that at a trial court, that that stuff had happened. Okay. Any further questions? No questions. Besides me? No questions. Okay. Thank you, Your Honor. Thank you, Mr. Hart. Mr. McIntosh, Bowe, Klein? Yes, thank you, Your Honor. So at the end of the day, what this arbitration provision clearly is about is attempting as much as possible to create a one-sided situation. Credit acceptance goes to court in Sue's Ms. Cartwright. Credit acceptance carves out its right to repossess the collateral. Credit acceptance carves out its right to sell the collateral without judicial oversight. Credit acceptance systematically violates Illinois law when it comes to that by failing to send borrowers an affidavit of defense. But credit acceptance would like to escape the consequences of its actions by getting courts to compel individual parties to arbitration because this is really about avoiding class exposure so that they can systematically violate the law and shift the cost of those violations onto the consumers. That's directly contrary to what the Illinois legislature is trying to do in this statute with the affidavit of defense. Now, I think the court has really raised an important issue when it comes to the scope of this arbitration clause because, as the court rightly noted, a dispute is any controversy or claim arising out of the contract. And if the contract arises under Kentucky law, then this dispute itself may not even fit the broad definition of dispute because we're talking about the violation of an Illinois statute that's going to apply when credit acceptance repossesses the collateral and sells it from an Illinois citizen. So, again, this is an issue that is the burden of proof of credit acceptance corporation. And at bottom, every single word in this contract was chosen to be placed in there by credit acceptance corporation as the drafter. So if there are any issues of concern when it comes to, well, I can see where one side is coming from and they're both reasonable, that has to lean in favor of Ms. Cartwright. I mean, we've done multiple cartwheels trying to figure out exactly how this carve-out of disputes concerning the repossession of the vehicle and the sale of the collateral, how that interplays with the other provisions in this contract, whether it's the broad definition of dispute or whether it's that notwithstanding the foregoing language in paragraph 7. At the end of the day, putting this language in here told Ms. Cartwright that if we're going to repossess this vehicle and sell it, things about that are not subject to this arbitration clause. Credit acceptance made that choice to say things like that throughout this contract. It was consistently trying to peel out repossession and sale of the collateral from arbitration. So at the end of the day, when we look at this contract as a whole, which we must, it's clear that the case below, the counterclaim that Ms. Cartwright fought, is not subject to this arbitration clause. And I'd welcome the opportunity to answer any other questions that the Court has at this time. Thank you both counsel for your arguments here today. Obviously, the Court has an important decision to make for you. We'll take the matter under advisement and we will issue an order in due course.